UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

№ 14-CV-00432
_____

NORGUARD INSURANCE COMPANY,

Plaintiff,

v.

RCJ CONSTRUCTION SERVICES CORPORATION, I.T.D. CONTRACTING INC., T.D. CONSTRUCTION SERVICES CORP., IAN RITCHIE, ATHENA ROBINSON, AND KHALID CHOUDARY,

Defendants.

_____

**REPORT & RECOMMENDATION**
_____

**January 19, 2018**

**To the Honorable Sandra L. Townes,
United States Senior District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff, Norguard Insurance Company ("Norguard"), commenced this instant action against RCJ Constructions Services Corporation ("RCJ"), I.T.D. Contracting Inc. ("I.T.D."), TD Construction Services Corp. ("T.D."), Ian Ritchie ("Ritchie"), Athena Robinson ("Robinson"), and Khalid Choudhary (collectively, "Defendants") on January 22, 2014, to collect damages incurred from Defendants' misrepresentations and omissions to obtain workers' compensation

1

and employer's liability insurance at below market rates. (*See* Dkt. No. 1, Complaint ("Compl.")). Subject matter jurisdiction is predicated upon 28 U.S.C. § 1332.

On April 7, 2014, Norguard and defendants Ritchie, Robinson, RCJ, I.T.D., and T.D. (collectively, the "settled Defendants") entered into a Settlement Agreement ("the Settlement Agreement"). (Dkt. No. 28-9). At present, Norguard has filed a motion for default judgment against Defendants RCJ, I.T.D., Ritchie, and Choudhary, alleging failure to make any payments under the Settlement Agreement. (Dkt. No. 28-1, Affirmation in Support ("Affirmation")).

Your Honor has referred Norguard's motion for default judgment to me for a report and recommendation. (*See* Dkt. Entry, 08/08/2017). For the reasons stated herein, I respectfully recommend that Norguard's motion for default judgment be granted in part and denied in part.

## BACKGROUND

### I. Factual Background

In April 2011, ABRS Planning & Brokerage, Inc., directed by Defendants, submitted a worker's compensation and employers' liability coverage insurance application for residential concrete and cement work. (Affirmation ¶ 7; *see also* Compl. ¶ 26). Based on the information included in the application, Norguard issued an initial Worker's Compensation and Employer's Liability Coverage Insurance Policy effective for one year, from April 25, 2011, through April 25, 2012. (Affirmation ¶ 8; Compl. ¶ 33; s*ee generally,* Dkt. No. 28-2).

On August 12, 2012 Norguard audited I.T.D.'s business records for the period of May 1, 2011, through May 1, 2012. (Affirmation ¶ 9; Dkt. No. 28-3; Compl. ¶ 34). During the audit, Norguard discovered that despite what was represented on their initial insurance application, Defendants actually engaged in "commercial" concrete work not "residential" concrete work. (Affirmation ¶ 9; Compl. ¶ 35). Norguard also found that I.T.D. had a substantially higher

payroll than what they had previously represented in their initial application. (Affirmation ¶ 9; Compl. ¶ 35).

In response to the audit findings, Norguard sought to retroactively bill the Defendants for the premium that should been assessed given the actual work done, and the substantially higher payroll for the period of the policy coverage. (Affirmation ¶ 10; Compl. ¶ 36). Norguard assessed the additional premium at $232,026.00. (Dkt. No. 28-6; Compl. ¶ 36)[1].

On February 7, 2013, Norguard performed a revised final audit resulting in further modification of the premium. (Affirmation ¶ 11). Following the final audit, Norguard assessed an additional $108,074.00 bringing the total amount of the premium to $340,100.00 (Affirmation ¶ 11; *see also* Dkt. No. 28-5).  The remaining premium balance, after payments were credited, totaled $204,534.00. (Affirmation ¶ 11).

Subsequently, Ritchie and Robinson formed a new company, T.D. (*Id.*). T.D. procured a Worker's Compensation and Employer's Liability Coverage Insurance policy from Norguard for the period of October 3, 2012 to October 3, 2013. (Affirmation ¶ 12).

On March 21, 2013, Norguard audited T.D.'s business records. Through this audit, Norguard discovered that T.D. and I.T.D. had the same owners and employees including defendant Choudhary, the accountant. (Affirmation ¶ 13). After the audit, Norguard assessed T.D. with an additional premium of $176,935.00. (Affirmation ¶ 13).

Norguard commenced this action against Defendants under New York common law fraud alleging that Defendants obtained a lower workers' compensation insurance premium by claiming their work was for "residential" premises, when in reality, it was for "commercial

---

[1] There is a discrepancy with the amount of the additional post-audit premium. The Complaint and worker's compensation insurance premium bill state the additional premium was assessed at $227,514.00 but the motion for default judgment states the amount as $232,060.00. (*See* Compl. ¶ 36; Dkt. No. 28-6 at 2; Dkt. No. 28-1 at ¶ 10).

3

premises. (Compl. ¶ 35). Norguard and the settled Defendants entered into the Settlement Agreement on April 7, 2014.[2] The settled Defendants agreed to pay Norguard $200,000 in an installment plan. (Affirmation ¶ 14; *see also* Dkt. No. 28-9). The settled Defendants were to pay: (a) $50,000 on or before July 1, 2014; and, (b) thirty (30) consecutive monthly payments of $5,000.00 on the first of each month from August 1, 2014, to December 1, 2016. (Affirmation ¶ 14; *see also* Dkt. No. 28-9). The settled Defendants also agreed to execute confessions of judgment where they acknowledged providing false information on their application for a worker's compensation insurance policy to obtain a reduced rate on their insurance premiums. (Affirmation ¶ 15; Dkt. No. 28-9 at 6). Further, the settled Defendants also agreed that upon default of the Settlement Agreement, Norguard may obtain a judgment for the full amount of lost retrospective premium payments, which totaled $477,004.23. (Affirmation ¶ 16; Dkt. No. 28-9 at 6-7).

The settled Defendants failed to make payments under the Settlement Agreement, despite a sixty (60) day extension granted to them by Norguard in the Settlement Agreement Addendum. (Dkt. No. 28-9 at 15).  In the event of default, the Settlement Agreement allows Norguard to pursue all remedies available by law; including the right to confess judgment against the settled Defendants, the right to reinstate or refile and prosecute this litigation, or the right to pursue their security interest pursuant to paragraph 4 of the Settlement Agreement. (*See* Dkt. No. 28-9 at ¶¶ 4, 6, 10).

---

[2] Norguard and the settled Defendants entered into an addendum to the Settlement Agreement in March 2015. This addendum stated that the settled Defendants acknowledged that they were in default of the Settlement Agreement and provided an additional sixty (60) day extension to cure their default.

4

## II. Procedural Background

Norguard filed this case on January 22, 2014, and shortly thereafter filed a stipulation of dismissal as to Khalid Choudhary. (*See* Dkt. No. 10). A stipulation of dismissal *without prejudice* was filed and granted by Your Honor in December 2014. (Dkt Nos. 12, 13). The dismissal granted Norguard the right to "reopen the case pursuant to the terms and conditions of the settlement reached with the defendants." (Dkt. No. 12). About two years later, Norguard sought to reopen the case because of Defendants' failure to meet the terms and conditions of the Settlement Agreement. (*See* Dkt. No. 14). Your Honor granted Norguard's motion and the case was reopened on December 1, 2016. (*See* Dkt. Entry, dated 12/1/2016). Subsequently, Norguard filed multiple requests for certificate of default and the Clerk of this Court entered default on April, 6, 2017, as to I.T.D. Contracting, Inc. and RCJ Construction Services Corporation. (*See* Dkt. Nos. 20, 21, 22, 23, 24; *see* Docket Entry, dated 4/6/2017). On May 18, 2017, Norguard filed this motion for default judgment against Defendants.[3] (*See* Dkt. No. 28). This Court views the motion to reopen and subsequent motion for default judgment as Norguard executing its' right to reopen this litigation and proceed to default judgment rather than enforce the other terms of the Settlement Agreement.

## DISCUSSION

### I. Standard of Review

A plaintiff may obtain a default judgment under FED. R. CIV. P. 55. "The dispositions of motion for entries of defaults and default judgments… are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and

---

[3] Norguard filed this motion for default judgment against RCJ, I.T.D., Ritchie, and Choudhary. However, the Clerk of this Court entered default for I.T.D. Contracting and RCJ Construction Services Corporation.

5

to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993).

Rule 55 sets out a two-step process under which a default judgment may be granted. *City of N.Y. v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 128 (2d Cir. 2011). First, if a party has failed to plead or otherwise defend, the clerk of the court may enter a certificate of default pursuant to FED. R. CIV. P. 55(a) at the request of the plaintiff. *See New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005). Second, if after the entry of default the party still fails to appear or move to set aside the default than the plaintiff must seek a judgment by default under Rule 55(b). *Id.* When the clerk enters default, the defendant concedes all well-pleaded factual allegations of liability with the exception of those concerning damages. *Greyhound Exhibit group, Inc. v. E.L. U.L. Realty Corp.,* 973 F.2d 155, 158 (2d. Cir. 1992). Therefore, this Court accepts as true the Complaint's allegations of common law fraud.[4] (*See* Compl. at ¶¶ 55-65).

## II. Liability

In order to prove fraud under New York law, "a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.* 98 F.3d 13, 19 (2d Cir. 1996)(internal citation omitted). Rule 9(b) of the Federal Rules of Civil Procedure requires that in all averments of fraud the circumstances constituting fraud shall be stated with particularity. FED. R. CIV. P. 9(b). This circuit has interpreted the particularity requirement to mean that "when a complaint charges fraud, it must (1) detail the statements …

---

[4] While the Complaint also includes Count II common law fraud and Count III negligent misrepresentation these allegations are directed towards Defendant Choudhary, who was dismissed from this case as of May 27, 2014. (*See* Dkt. No. 10).

that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and the statements …were made, and (4) explain why the statements …are fraudulent." *Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.,* 136 F.3d 273, 275 (2d. Cir. 1998) (quoting *Harsco Corp. v. Segui,* 91 F.3d 337, 347 (2d Cir. 1996).

While Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," such relaxation of the pleading standard should not be perceived as a "license to base claims of fraud on speculation and conclusory allegations." *See* FED. R. CIV. P. 9(b); *see also Acito v. IMCERA Group, Inc.* 47 F.3d 47, 52 (2d Cir. 1995)(internal citation omitted). A plaintiff must provide facts that give rise to a strong inference of fraud. *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994), *superseded by statute on other grounds, as stated in, In re Paracelsus Corp. Sec. Litig.,* 61 F. Supp. 2d 591, 595 (S.D.Tex. 1998). A strong inference of fraud can be established by either: (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (2) by alleging facts that constituted strong circumstantial evidence of conscious misbehavior or recklessness. *Id.*

Norguard has shown that material false representations were made when Defendants stated they performed "*residential* concrete and cement work," when they actually performed *commercial* concrete and cement work and also when they underrepresented the amount of the annual projected payroll. (*See* Compl. ¶¶ 27, 35, 39). Defendants first made these false representations through I.T.D. Then, after an audit of I.T.D. brought these misrepresentations to light, and subsequently raised their insurance premium, Defendants made the same misrepresentations through T.D., its' alter ego. (*See* Compl. ¶¶ 27, 35, 36, 39). The Defendants conduct alone constitutes "strong circumstantial evidence of conscious misbehavior" and therefore establishes a strong inference of fraud. *Shields,* 25 F.3d at 1128. Norguard reasonably

relied on the information submitted in Defendants' insurance application. It was not until the audit that Norguard learned of the misrepresentations. (*See* Compl. ¶ 35). At that time, Norguard properly assessed the Defendants for insurance coverage and raised their premium. (*See* Compl. ¶ 36). Because of their reliance on Defendants' misrepresentations, Norguard assessed Defendants at a much lower premium. Norguard suffered damages from Defendants attempt to obtain below market rates for their workers' compensation and employer's liability insurance.

Norguard has met its burden in detailing the context and content of Defendants' fraudulent statements. In its Complaint, Norguard states that the fraudulent statement were made by the Defendants via their insurance applications and that the statements were false because they misrepresented both the work the Plaintiffs did and the anticipated amount of the payroll for the period of the policy coverage. Therefore, Defendants can be held liable under the allegations of common law fraud.

### III. Damages

#### A. Actual Damages

By defaulting, Defendants admit that damages were proximately caused by their conduct. *Au Bon Pain Corp. v. Artect, Inc.* 653 F.2d 61, 69-70 (2d Cir. 1981). Consequently, Norguard must prove only "that the compensation sought relates to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159. Norguard has supplied sufficient documents and affidavits for the Court to determine the proper compensatory relief. Damages from common law fraud are limited to the true damages caused by the fraudulent behavior. *Bricklayers Ins. and Welfare Fund v. Rockmore Contracting Corp.* No. 11-cv-3854 (FB)(RER), 2013 WL 2120306 (E.D.N.Y. March 8, 2013).

Norguard seeks a judgment for $ 477,004.23, the amount listed in the confessions of judgment in the Settlement Agreement. (Dkt. No. 28-9 at 3). However, in the order of dismissal the Court retained jurisdiction only to "*reopen* the case pursuant to the terms and conditions of the settlement reached with the defendants." (Dkt. No. 13).  The Court did not retain jurisdiction to enforce the other terms of the Settlement Agreement, which allowed Norguard to seek other remedies, including the right to confess judgment against the settled Defendants and pursue their security interest pursuant to paragraph 4 of the Settlement Agreement. (Dkt. No. 28-9 at ¶ 4, 5). Norguard's decision to reopen this case limits them to the damages pleaded in the Complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *see also Silge v. Merz* 510 F.3d 157, 160 (2d Cir. 2007) (declining to award pre-judgment interest where plaintiff failed to include a claim for such damages in the complaint).

Along with the motion for default judgment, Norguard provided two bills, one to I.T.D. and one to T.D. (*See* Dkt. No. 28-6; Dkt. No. 28-8).  After the initial audit of I.T.D., Norguard raised the premium by $227,514.00, making the total policy cost $340,100.00. (*See* Compl. ¶ 36; Dkt. No. 28-6). The I.T.D. bill details that there was an $80.00 charge for fees and a credit of $135,646.00 for prior payments, making the total account balance for I.T.D. $204,534.00. (Dkt. No. 28-6). After the second audit, T.D.'s premium was increased by $176,935.00. (*See* Dkt No. 28-8; Dkt. No 28-1 at ¶ 13.) After factoring in the remaining debts and credits in the account, the total amount due was $174,376.89. (*See* Dkt. No. 28-6; Dkt. No. 28-8). Accordingly, the total damages incurred by Norguard is $378,910.89.

**CONCLUSION**

Based on the foregoing reasons, I respectfully recommend that Norguard's motion for default judgment be granted in part and denied in part. Judgment should be entered against Defendants jointly and severally in the total amount of $378,910.89. Any objections to the recommendations made in this report must be filed with the Clerk of the Court and the Honorable Sandra L. Townes within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

*Ramon E. Reyes, Jr.*
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: January 19, 2018
Brooklyn, NY